UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATHANIEL TAYLOR PHELPS,

    Plaintiff,

v.                                      Case No. 6:21-cv-2105-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

    Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly evaluate the medical opinions of Gerardo Soto, M.D., and therefore failed to provide substantial evidence in support of the residual functional capacity (RFC). As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    *I.    Background*

    Plaintiff, who was born in 1970, claimed disability beginning June 2, 2018 (Tr. 195, 205). He was 47 years old on the alleged onset date. Plaintiff completed two years of college, and his past relevant work experience included work as a vendor, a

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

construction worker I, and a bouncer (Tr. 39, 50, 234-35). Plaintiff alleged disability due to a knee problem, an ankle problem, a heart problem, diabetes, a stroke, post-traumatic stress disorder (PTSD), an anxiety disorder, high blood pressure, high cholesterol, and hearing loss (Tr. 233).

Given his alleged disability, Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 195-98, 204-16). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 55-85, 88-115). Plaintiff then requested an administrative hearing (Tr. 116-17). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 32-54). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-31).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since June 2, 2018, the alleged onset date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: history of atrial fibrillation (AFib), diabetes mellitus type 2, diabetic neuropathy, hypertension, hyperlipidemia, sleep apnea, headaches, fracture of the right fibula and distal tibia, obesity, and anxiety-related disorder (Tr. 13). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ then concluded that Plaintiff retained the

RFC to perform less than the full exertional range of light work with the following limitations:

> The claimant can lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently. The claimant can sit, stand and walk for approximately six (6) hours in an eight-hour (8) workday with normal breaks. The claimant could occasionally climb stairs, balance, stoop, kneel, crouch and crawl, but he should never climb ladders or scaffolds. This individual cannot walk on uneven or bumpy (not flat) surfaces. He must avoid exposure to vibration, unprotected heights and hazardous machinery. During the eight-hour workday, the claimant must further avoid concentrated exposure to extreme cold. This individual can handle exposure to a noise level intensity not above the "moderate" level as defined in the Selected Characteristics of Occupations (SCO) (*"Moderate" is defined in the SCO as the noise intensity level in a business office where typing is done, department store, grocery store, light traffic, and fast food restaurant at off-hours*). The claimant could perform tasks that are simple and that can be learned in thirty (30) days or less.

(Tr. 16) (emphasis in original). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 23). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a photocopy machine operator, a routing clerk, and a housekeeping, cleaner (Tr. 25, 51-53). Accordingly, based on Plaintiff's age, education, work experience, RFC,

and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 189-91). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.     *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart

4

P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court

sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion of Dr. Soto, Plaintiff's primary care physician, in setting forth the RFC. Plaintiff contends that the ALJ improperly focused upon findings not pertinent to Plaintiff's severe physical impairments, cherry-picked evidence having no connection to Plaintiff's impairments, and effectively played doctor in determining the RFC. Given such deficiencies, Plaintiff contends that the RFC assessment is not supported by substantial evidence.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically

determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-69 (11th Cir. 2019) (*per curiam*) (stating that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC[,]" and that the "ALJ must also consider a claimant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

In this instance, Plaintiff challenges only the ALJ's evaluation of Dr. Soto's opinion. Previously, in the Eleventh Circuit, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel*, 631 F.3d at 1179; *Crawford v. Comm'r of*

*Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).  Good cause existed where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Winschel*, 631 F.3d at 1179 (citation omitted).  Claims filed on or after March 27, 2017, are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians, however.  *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also Schink*, 935 F.3d at 1259 n.4 (11th Cir. 2019).  Of note, the new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017.  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896-98 (11th Cir. 2022); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (*per curiam*).[2]  Indeed, the Eleventh Circuit recently concluded that, since the new regulations fall within the scope of the Commissioner's authority and are not arbitrary and capricious, the new regulations abrogate the Eleventh Circuit's prior precedents applying the so-called treating-physician rule.  *Harner*, 38 F.4th at 896.  Accordingly, since Plaintiff submitted his applications for benefits on March 25, 2020, and November 17, 2020 (Tr. 195-98, 204-16), the ALJ properly applied the new regulations.

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

Namely, under the new regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see Tucker v. Saul*, Case No.: 4:19-CV-00759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the

relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5), 416.920c(c)(3)(i)-(v), (4) & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[3] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Consistent with the new regulations, the ALJ discussed Dr. Soto's treatment records and subsequently considered Dr. Soto's opinions, finding them unpersuasive as the opinions were inconsistent with the other evidence of record and not supported by his own treatment notes and respective studies (Tr. 14-23). First, as to Dr. Soto's opinions regarding Plaintiff's mental limitations, the ALJ properly found them unpersuasive as inconsistent with his own treatment notes and the other evidence of record (Tr. 22-23). In March 2020, Dr. Soto completed a Mental Capacity Assessment (Tr. 712-14). The form instructed the medical source to indicate the degree of limitation resulting from only psychological factors in each area of functioning using the following continuum:

> <u>NONE</u>: You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

> <u>MILD</u>: Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
>
> <u>MODERATE</u>: Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
>
> <u>MARKED</u>: Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
>
> <u>EXTREME</u>: You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.
>
> ***PLEASE NOTE: An "extreme" impairment is very severe, and will not apply to most patients. Please mark "Extreme" only when well supported by clinical evidence.***
>
> <u>UNKNOWN</u>: Unable to assess limitations based on examination or review of medical records.

(Tr. 712) (emphasis in original). In filling out the form, Dr. Soto indicated that Plaintiff experienced moderate to extreme issues in every area of functioning based on Plaintiff's severe anxiety and agoraphobia (Tr. 712-14). Specifically, Dr. Soto found that Plaintiff experienced moderate limitations in the ability to follow one- or two-step oral instructions to carry out a task (Tr. 712). He stated that Plaintiff experienced marked limitations in the ability to recognize a mistake and correct it, or identify and solve problems; to use reason and judgment to make work-related decisions; to initiate and perform a task he knows how to do; to work at an appropriate and consistent pace, or complete tasks in a timely manner; to sustain an ordinary routine and regular attendance at work; to distinguish between acceptable and unacceptable work performance; to maintain personal hygiene and attire appropriate to a work setting; and to be aware of normal hazards and take appropriate precautions (Tr. 712-13).

11

Further, despite the form's explicit instruction that "extreme" limitations would not apply to most patients and should be supported by clinical evidence if selected, Dr. Soto indicated that Plaintiff experienced extreme limitations in the following areas: the ability to sequence multi-step activities; to ignore or avoid distractions while working; to work close to or with others without interrupting or distracting them; to work a full day without needing more than the allotted number or length of rest periods during the day; to adapt to changes; to manage psychologically based symptoms; to set realistic goals; to make plans independently of others; to cooperate with others, or ask for help when needed; to handle conflicts with others; to understand and respond to social cues; to respond to requests, suggestions, criticism, correction, and challenges; and to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness (Tr. 712-14).

In finding Dr. Soto's opinions on Plaintiff's mental limitations unpersuasive, the ALJ explained that the many marked to extreme limitations in abilities were overall inconsistent with the medical records; lacked explanation and appeared conclusory; came from a primary care physician rather than a mental health professional; and were inconsistent with the other psychiatric evidence of record (Tr. 22-23). As the ALJ noted, Plaintiff presented to Dr. Soto complaining of anxiety, feeling anxious around crowds, and experiencing recurrent nightmares but consistently appeared in no acute distress and was alert and fully oriented with no abnormal psychiatric findings upon examination (Tr. 14-23, 669-73, 786-91). Based on Dr. Soto's treatment notes, the ALJ found the opinions of the state agency medical

consultants unpersuasive (Tr. 22, 55-64, 69-81). Namely, the state agency medical consultants concluded that the record contained insufficient material to make a determination and that Plaintiff's mental health symptoms were not severe (Tr. 22, 55-64, 69-81). The ALJ found such conclusions unpersuasive, acknowledging that Dr. Soto's progress notes – issued after the opinions of the state agency medical consultants – showed anxiety that, while not disabling, was severe (Tr. 22, 55-64, 69-81). The ALJ elaborated that, despite a repeatedly observed normal psychiatric inspection, Dr. Soto's records showed persistently subjective complaints of anxiety that were severe enough for medication to be prescribed and accordingly found the state agency's opinions unpersuasive (Tr. 22). As the ALJ highlighted, however, Dr. Soto failed to provide an explanation in the Mental Capacity Assessment or point to any records demonstrating the basis for the marked and extreme limitations he opined Plaintiff experienced because of Plaintiff's mental impairment, nor could he, as his records did not support such limitations (Tr. 22-23).

Further, as the ALJ discussed, the other evidence of record indicated that Plaintiff demonstrated normal findings upon psychiatric examination, including that Plaintiff presented as fully oriented, cooperative, and with appropriate mood and affect (Tr. 14-23, 651, 680, 706, 736). Put simply, nothing in the medical evidence of record supported the marked and extreme limitations identified by Dr. Soto. Beyond that, although the regulations did not require the ALJ to discuss Dr. Soto's specialization in considering the persuasiveness of Dr. Soto's opinions, the regulations explicitly allow the ALJ to factor a medical source's specialization into the determination. *See*

20 C.F.R. §§ 404.1520c(b)(2) &(c)(4), 416.920c(b)(2) & (c)(4). Under the regulations, the ALJ thus appropriately noted that Dr. Soto was not a mental health professional and that Dr. Soto's opinion on Plaintiff's mental impairments was not persuasive. The ALJ therefore provided substantial evidence in support of his finding that Dr. Soto's opinion regarding Plaintiff's mental limitations was unpersuasive.

Likewise, the ALJ provided substantial evidence in support of his finding that Dr. Soto's opinion as to Plaintiff's physical limitations was unpersuasive. Specifically, with respect to Dr. Soto's opinions regarding Plaintiff's physical limitations, the ALJ correctly found the opinion unpersuasive as not consistent with Dr. Soto's own treatment notes or the other evidence of record (Tr. 23). In October 2020, Dr. Soto completed a Physical Assessment form for Plaintiff (Tr. 781-82). According to Dr. Soto, Plaintiff would experience constant symptoms associated with his anxiety, migraines, AFib, sleep apnea, and diabetes with neuropathy that were severe enough to interfere with the attention and concentration required to perform simple, work-related tasks (Tr. 781). Dr. Soto noted that Plaintiff would also experience side effects from his medication, *i.e.*, Metformin, that would make it dangerous for Plaintiff to operate heavy machinery (Tr. 781). Given the impairments, symptoms, and side effects, Dr. Soto opined that Plaintiff would need to recline or lie down during an eight-hour workday in excess of the typical break schedule because of drowsiness and that he could walk half of a block without rest or significant pain, could stand or walk for one hour in an eight-hour workday, could sit for one hour in an eight-hour workday, and would need to take daily breaks for approximately 15 to 20 minutes per

break during an eight-hour workday (Tr. 781). As to Plaintiff's ability to lift and carry, Dr. Soto indicated that Plaintiff could frequently lift less than 10 pounds and occasionally lift 10, 20, and 50 pounds (Tr. 781). In addition, Dr. Soto concluded that Plaintiff would have limitations in performing repetitive reaching, handling, or fingering, finding that Plaintiff could use his hands and fingers on the right hand only 10 percent of the time but could use the right arm and the left hands, fingers, and left arm 100 percent of the time (Tr. 781). Dr. Soto stated that Plaintiff would be unable to cope with stress and would be absent from work because of his impairments more than four times per month (Tr. 781-82). In closing, Dr. Soto stated that he believed that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation form (Tr. 782).

As noted, the ALJ found Dr. Soto's opinions on Plaintiff's physical limitations unpersuasive, explaining that the physical limitations were inconsistent with the medical records, including respective studies; the extreme limitations as to walking, standing, and right-hand use lacked explanation; and the limitations were inconsistent with the observations from the other physicians and medical staff (Tr. 23). For example, the ALJ discussed X-rays indicating only mild but not significant soft tissue swelling of the left foot and ankle with no evidence of acute fracture or dislocation, no joint effusion, no radiopaque foreign body, normal bony mineralization, only mild degenerative changes with small calcaneal enthesophytes, and chronic fracture deformities of the proximal diaphysis of the right fibula and distal diaphysis of the right tibia from a prior fracture (Tr. 19, 21-23, 681, 685-87, 698-700). The ALJ

acknowledged Plaintiff's diminished sensation in the left toes and lack of sensation in the right lower extremity in June and July 2019 and September 2020 and loss of sensation to tuning fork on the lower extremities in September 2020 but also noted normal motor strength in all extremities during those appointments and repeated neurological examinations showing that Plaintiff's neurological symptoms were nonfocal; his motor strength was normal in the upper and lower extremities; his extremities showed no clubbing, cyanosis, or edema; and his range of motion, strength, coordination, sensation, ambulation, and gait were normal (Tr. 18-19, 670, 673, 680, 735-36, 787, 790).

In addition, the ALJ considered the evidence relating to Plaintiff's diabetes, headaches, hypertension, and cardiovascular symptoms and discussed Plaintiff's high glucose and A1c levels (Tr. 18-19). After starting a medication regimen, Plaintiff's numbers improved (Tr. 18-19, 688, 737, 764, 792). Plaintiff also received medication to treat his headaches, and, intermittently, he denied having headaches (Tr. 669, 672, 735, 757, 788, 795). Regarding Plaintiff's hypertension and cardiovascular symptoms, the ALJ noted the initially elevated blood pressure readings in June 2019 and again in March 2020 and June 2020 when Plaintiff presented to the emergency room but also the otherwise normal blood pressure readings during Plaintiff's other examinations when Plaintiff was taking medication (Tr. 19, 670, 672, 680, 735, 786, 790, 795). As the ALJ indicated, notwithstanding the limited instances of elevated blood pressure, Plaintiff consistently demonstrated normal findings upon cardiovascular examination,

including regular rate and rhythm and normal S1 and S2 (Tr. 18-19, 670, 673, 680, 736, 757, 787).

Given the medical findings, the ALJ properly found that the medical evidence of record did not support the extreme limitations set forth by Dr. Soto and thus was inconsistent with Dr. Soto's opinion. Moreover, beyond the medical evidence of record, the ALJ cited Plaintiff's statements regarding his ability to perform a range of daily activities, including taking care of his dog and experiencing no difficulty with personal care, cooking, cleaning, making repairs in the home, mowing the lawn, driving, using Facebook, and handling his funds (Tr. 22, 270-77). Indeed, Plaintiff's ability to perform extensive activities of daily living further underscored the ALJ's finding that Plaintiff's impairments were not disabling. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Against that backdrop, therefore, Plaintiff's contention that the ALJ focused upon findings not pertinent to Plaintiff's severe physical impairments and cherry-picked evidence having no connection to Plaintiff's impairments falls flat. As detailed above, the ALJ thoroughly discussed each of Plaintiff's severe impairments, their attendant symptoms, the conservative treatment for each, and the generally normal findings upon examination and during emergency care. Further, Plaintiff's additional argument that, since Dr. Soto was the only medical source with a long-term treating relationship who provided opinions on Plaintiff's functionality, the ALJ effectively played doctor by substituting his lay opinion for that of Dr. Soto and by relying on his lay interpretation of the raw medical data in crafting the RFC also lacks merit. Though

an ALJ may not take on the role of doctor, the final responsibility for determining the RFC remains with the Commissioner, not a physician. *See Leslie v. Comm'r of Soc. Sec.*, No. 22-10676, 2022 WL 4476661, at *4 (11th Cir. Sept. 27, 2022). Here, the ALJ did not "play doctor" but rather properly considered all the evidence of record, including the medical opinions from Dr. Soto, in setting forth the RFC. In doing so, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

IV. Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. Plaintiff's Memorandum in opposition to the Commissioner's decision (Doc. 22) is denied as moot.

3. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 8th day of November, 2022.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record